UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : Criminal No. 06-CR-060 |
| v. | : (RJL) |
| GABRIEL WILLIAMS | : |

**MOTION FOR MODIFICATION OF BOND**

Defendant, Gabriel M. Williams, by and through his undersigned counsel, Frances M. D'Antuono, Esquire, respectfully moves this Honorable Court, pursuant to 18 U.S.C. Section 1342(b), for his release pending trial under such conditions, designed to ensure his appearance in court as required and the safety of the community, as the Court shall deem necessary and appropriate. In support of this Motion, the defendant states as follows:

**I. Factual Background**

Mr. Williams was arrested on February 2, 2006 outside his home in the District of Columbia. According to DEA agent accounts, Mr. Williams arrived at his home at about 6:20 a.m. He was driving his car, a 2003 Cadillac in good condition purchased at auction with the D.C. license plate L-4815. [1] The DEA had acquired a search warrant for his house. Once he was stopped outside the residence, DEA agents acquired his keys, and opened the house. Mr.

---

[1] Mr. Williams had recently begun a limousine service business, having acquired all necessary and proper licensing and insurance and having met other requirements to conduct that business as a sole proprietor. Prior to that time, and as he was acquiring the various components needed to begin the limousine business, he was working for a company called Cintas, as the service representative for large scale sanitizing projects, and also for C and J Construction on an *ad hoc* basis as a finish carpenter. In fact, Mr. Williams has a 15 year history in the construction business, working as a finish carpenter, an installer of specialized windows, laying cable for cable company, and in other good jobs in the industry. See *infra* under Verified Work History.

Williams did not attempt to flee nor offer any resistance to his detention. He simply asked to speak to an attorney after being told there was a search warrant. That request was ignored.

Mr. Williams went peacefully into the house led by the DEA, was handcuffed and directed to sit with an agent on the couch in the living room while the house was being searched. Mr. Williams was cooperative throughout all phases of the detention and search. Perforce, he had made no effort to flee even upon seeing the police initially outside his house (a large number of them, as is typical with the execution of search warrants), all of whom were wearing search jackets, with "POLICE" written in large letters across the back. [2]

An agent alleges that Mr. Williams, upon being asked while detained if he had any weapons or drugs in the house, *told* the police what was in the house and where to find it. [3] The agents recovered, *inter alia*, two semi automatic handguns (not chambered, but each holding up to eight rounds), one in the bedroom and one deep behind the pillows on the living room couch. They also recovered a two shot "Derringer" type collectors' item, which came packaged in a carved out book at the very top of a shelf in the kitchen. Further, they recovered approximately 126 grams of what preliminarily tested out to be cocaine base, and 83 grams of what tested out to be powdered cocaine, along with two digital scales with apparent cocaine

---

[2] Magistrate Judge Kaye, who did the preventive detention in this case and heard from supervising DEA agent Janelle Boggs under oath, specifically found as fact that Mr. Williams was not a flight risk. A transcript of those proceedings has been ordered and is pending completion. However, undersigned counsel conducted that hearing on Mr. Williams' behalf, and is thus able to make this representation from direct personal knowledge.

[3] This agent is not Janelle Boggs, the Government's testifying witness at the preventive detention hearing under the legal rules permitting the admission of hearsay at pre-trial hearings. These assertions about Mr. Williams' alleged statements will be litigated through motions at the proper time in this case.

residue, and a number of empty ziplock bags, all located in a black backpack in what was characterized as a kitchen "laundry" closet. They seized numerous other items, including a deed to the house in Mr. Williams' name, and many other personal papers.

II. **Mr. Williams' Scant Criminal Record Is Totally Lacking in Dangerous or Violent Conduct**

As is noted in the attached Affidavit obtained from Mr. Williams' prior attorney, Karen Silver, Esquire, Mr. Williams has but one prior conviction of record, incurred in the state of Maryland in 1998, nearly seven years ago. That conviction was a misdemeanor, involving possession of a hand gun in the locked trunk of a car, in a closed container in the trunk. He received and successfully completed probation for that offense. He has no known juvenile record. While his Maryland prior conviction may be cognizable under 18 U.S.C. Section 1922 as a prior "felony" handgun possession for purposes of indictment, it is still a misdemeanor offense in the state of Maryland, and should be so considered for purposes of bond consideration. In any event, Mr. Williams' prior record is scant indeed in comparison with that of many of the accused persons who come before this Court.

Further, the conduct involved in that prior misdemeanor was in the nature of a possessory offense only, and involved no violence or aggressive or dangerous conduct. It thus does not demonstrate any tendencies from which the community needs to be protected.

III. **Mr. Williams' Non-Violent and Non-Dangerous Character is Attested To By the Attached Character Letters.**

Attached as an Appendix hereto are an affidavit from Mr. Williams' previous lawyer, Karen Silver, Esquire, along with supporting prior case documents from the Maryland case, and a number of letters from friends and contacts of Mr. Williams, all verifying (1) his lack of

dangerousness to the community and (2) his trustworthiness with respect to returning to court if required, the two primary factors which this Court must consider in making a release determination pending trial. The letters span a large spectrum of persons, each of them productive, law-abiding, contributing members of the community. They have been submitted by a full-time graduate student and former human resources director (Adama Wilson), a clinical social worker of thirty years' duration for the D.C. Government (Keith Lewis), a senior auditor for the Federal Government who also possesses graduate degrees (Modupe Akinsika), a Montgomery County school teacher (Nakia Sutton), Mr. Williams' adoptive parents, his father (Prem Deben Williams) and his mother (Bernice Perkins), both of whom also hold good jobs and have throughout their careers,[4] a nurse (Jeanine Kwankam), a program director at the AARP (Gail Earle), a Buddhist nun (also a PhD, Dr. Diane Wilson), Mr. Williams' brother (David Williams), who notes the care that Gabriel has taken with his currently very ill father and with his nephew who has cerebral palsy, a mortgage loan consultant and independent contractor for federal and D.C. Government agencies (James Stroy), an office manager for the Library of Congress (Tonyia Ryland), a letter carrier (Ada Keaton), a cab driver and owner of a small cab company (Wayne Mulzac), and a waitress and full time graduate student at Johns Hopkins University (Tamar Anthony).

      These letters demonstrate that Mr. Williams is known, respected, cared for and admired across a broad spectrum of good people, and that he, in turn, is a person who respects others, takes time out to attend to their needs in place of his own, is caring and, as many would say,

---

[4] Mr. Williams was adopted as a small child and has never known his biological parents. He was raised by and considers Prem Deben Williams and Bernice Perkins his true parents, as they do.

"gentle," is not aggressive or harmful to anyone, and that he keeps his promises.  He is the kind of person much valued as a friend by other good people.

In keeping with his lack of any substantial prior criminal record and his lack of any violent prior convictions, the authors of these letters of reference offer to the Court their informed assurances, drawn from their many collective years of personal experience, that Mr. Williams is not a danger or a threat to any one, and that he will most certainly return to Court on any and all dates required.  As his prior attorney averred, he has never missed a court date and fully, willingly and promptly complied with any and all orders of the Court, including successfully completing his probation after his early plea to the misdemeanor handgun charge in the Maryland case in February of 1999.  Clearly, by his conduct in the prior case and while on probation, he has shown himself to be an excellent candidate for community supervision in the instant case, whether it be release on personal recognizance, third party supervision with a curfew, high intensity supervision with electronic monitoring, or any other release program.

**IV.   Mr. Williams' Verified Prior Work and Educational History**

Mr. Williams is a 1991 high school graduate of Roosevelt Senior High School in Northwest, Washington, D.C., where he has lived nearly his entire life.  After graduating, Mr. Williams went to work in the construction industry, for Camco Construction, Inc.,  as above noted in the Appendix letter from that company.  Undersigned counsel has spoken with his foreman there, Mr. Tim Carr, who praised Mr. Williams' work, honesty, and reliability, and who noted that he "would take Gabe back to work any time he wanted to come."  He only wished that all of his employees were as good.

5

In 1996, Mr. Williams learned to lay cable, working for a company named Alcatrel, which, although headquartered in the southern United States, had lucrative contracts in the D.C. metropolitan area. Mr. Williams went to them for an increase in pay.

From 1997 through 1999, Mr. Williams pursued a childhood dream and obtained a degree in culinary arts from ATI Culinary Arts School, while simultaneously working construction. He has also obtained certificates from the American Hotel and Motel Association in Hospitality Supervision and Food and Beverage Controls (original certificates not attached but in undersigned counsel's possession). Keeping up his food and beverage credentialing, in August of 2005 he took and passed the National Restaurant Association (NRA) ServSafe Food Protection Manager Certification Examination, which is accredited by the American National Standards Institute (ANSI)-Conference for Food Protection. As a result, Mr. Williams has been licensed by the District of Columbia as a Certified Food Manager (original certificates also in undersigned counsel's possession and available for the Court's and the Government's viewing, but not attached).

He has also obtained his Commercial Driver's License (CDL). He operated a tow-truck company after leaving Camco and Alcatrel, and, as has been adverted to above, took all steps to begin a limousine company in late 2005 and early 2006, with lottery winnings he had obtained from playing the D.C. lottery. Although he has won substantial amounts in prior years as well, his 2005 winnings were as follows: $15,000 on 11/27/05, $15,000 on 11/7/05, and $10,000 on 5/27/05. Although the Government has seized those (and other) lottery receipts, undersigned counsel has obtained copies of them from the D.C. Lottery and Charitable Games Control Board, reciting the amounts won and the D.C. Government check numbers issued out to Mr. Williams.

She has thus verified that he had the cash on hand to begin his business, which included the purchase of the first car to be used therein. Thus, Mr. Williams began his limousine business with monies obtained in an entirely licit manner. As noted, prior to obtaining these large winnings, Mr. Williams was working for Cintas Corporation. [5]

From the foregoing, it is evident that Mr. Williams has a long, legitimate work history, has continually endeavored to improve his skills and the breadth of his work experience, and has striven through on-the-job acquisition of skills and experience, through schooling and through licensure and formal testing to be able to make a good living and to support himself and his son in a completely law-abiding manner, not to mention his good fortune in winning the D.C. Lottery a number of times for considerable amounts of money. This documented history of work and education also supports court-ordered release pending trial of the case.

As noted, Mr. Williams' prior employer at Camco Construction has firmly stated that Mr. Williams can return to work at that company at any time he is released. Thus, Mr. Williams has full opportunities for employment and has a stable verified residence, both at his own house and at that of his child's mother, Yvette Saunders (also verified by undersigned counsel), where his child and Ms. Saunders' other three children live. He can also live with his father, who would benefit from that, as he is currently ill. Mr. Williams can thus be monitored wherever deemed best by this Court.

---

[5] The DEA has seized Mr. Williams' W2 form from his house verifying that employment, and undersigned counsel will copy it as soon as she is given access to the evidence to "inspect and copy it." However, undersigned counsel did speak personally with the human resources manager at Cintas Corporation, who verified Mr. Williams' employment there in the second half of 2005.

## V. Conclusion

Given the presumption of innocence that attaches to Mr. Williams as an accused person, the burden placed on Mr. Williams' liberty by his detention in this case is insupportable. He is presumed innocent, even in a case such as the present, wherein the statutory penalty upon conviction exceeds ten years. Given Mr. Williams' scant prior criminal history, which contains no drug trafficking, dangerous or felonious convictions, his successful completion of misdemeanor probation more than five years ago, his proven amenability to community supervision, his record of perfect attendance at all court matters, and long work history, his options for employment and residence, and the many letters of character reference provided by upstanding members of the community who know Mr. Williams well, undersigned counsel respectfully submits that the presumption that Mr. Williams is a flight risk and/or danger to the community based upon the potential penalties in this case has been overcome and he should be released on such conditions as are deemed appropriate by this court. [6] If and when he is, he will scrupulously honor each and every condition.

                                              Respectfully submitted,

ss/ _____
    Frances M. D'Antuono
    Unified Bar. No 358141

---

[6] Most of the information provided herein was not yet available or could not be verified by undersigned counsel in time for the preventive detention hearing in this case. This Court is thus differently positioned than was Magistrate Judge Kaye, when he detained Mr. Williams despite finding him not to pose any flight risk.

        218 7th Street, S.E.
        Washington, D.C. 20003
        (202) 544-6332
        Fdantuono@msn.com
        Counsel for Gabriel Williams

## Certificate of Service

    I hereby certify that a true and accurate copy of the foregoing Motion was served, via electronic filing, this 17th day of April, 2006, upon Anthony Scarpelli, Esquire, United States Attorney's Office, Narcotics and Gang Prosecution Section, 555 4th Street, N.W., Washington, D.C. 20530, and upon the chambers of the Honorable Richard J. Leon, United States District Judge and Presiding Judge in the case

        ss/    Frances M. D'Antuono